**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

LG CAPITAL FUNDING, LLC

                              Plaintiff,          **Civil Action No.:**

          v.

CARDIOGENICS HOLDINGS, INC.                       **VERIFIED COMPLAINT**

                              Defendant.

Plaintiff, LG Capital Funding, LLC ("Plaintiff" or "LG"), by and through its counsel, Garson, Ségal Steinmetz, Fladgate LLP, brings its Verified Complaint against Defendant, Cardiogenics Holdings, Inc. ("Defendant" or "CGNH") and respectfully alleges as follows:

## THE PARTIES

1.      Plaintiff LG Capital Funding, LLC is a limited liability company duly organized under the laws of the State of New York having a principal place of business located at 1218 Union Street, Suite #2, Brooklyn, New York 11225.  All members of LG Capital Funding, LLC are citizens of New York.

2.      Upon information and belief, Defendant Cardiogenics Holdings, Inc. is a corporation organized and existing under the laws of the State of Nevada having a principal place of business located at 6295 Northam Drive, Unit 8, Mississauga, Ontario, Canada L4V 1WB.  Cardiogenics Holdings, Inc. is traded publicly on the Over the Counter Markets, or "Pink Sheets," under the symbol "CGNH."

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) in that the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.      Venue is proper in this district pursuant to 27 U.S.C. §1391(a), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property which is subject of this action is situated; and it is the exclusive district which the parties agreed that the claims hereafter set forth can be brought.

## FACTS COMMON TO ALL CLAIMS
### The Note

5.      On or about May 23, 2014, CGNH issued two $52,500.00 Convertible Promissory Notes to LG.  The first note was executed and complied with.  The second note, a "Back End Note," provided LG with an opportunity to make another investment at a later date.  It is from this Back End Note which this action arises (the "Note").  A true and correct copy of the Note is attached hereto as **Exhibit A**.

6.      The Note provides that LG, at any after a 180 day holding period, has the right to convert all or part of the Note into shares of CGNH common stock (the "Common Stock").  Specifically, §3 of the Note provides, in pertinent part that:

> The Holder of this Note is entitled, at its option, at any time after 180 days, to convert all or any amount of the principal face amount of this Note then outstanding in shares of the Company's common stock (the "Common Stock") without restrictive legend of any nature . . .

7.      The mechanics of converting the Note required LG to submit a Notice of Conversion.  Accordingly, §4(a) of the Note provides, in pertinent part:

> Any Holder of this Note electing to exercise the right of conversion set forth in Section 4(a) hereof, in addition to the requirements set for in Section (a), and any prospective transferee of this Note, also is required to give the Company written confirmation that this Note is being converted ("Notice of Conversion") in the form annexed hereto as Exhibit A.

8.     As §4(a) of the Note dictates, the price at which each respective Note was convertible (the "Conversion Price") was to be determined "for each share of Common Stock to be equal to 58% of the lowest closing bid price of the Common Stock as reported on the OTCQB marketplace which the Company's shares are traded . . . for the twelve prior trading days including the day upon which a Notice of Conversion is received."

9.     Pursuant to §4(a), Notices of Conversion are to "be effectuated by the Company delivering the shares of Common Stock to the Holder within 3 business days of receipt by the Company of the Notice of Conversion."

10.     The conversion feature was essential in inducing LG to enter into the Note.  Investment in CGNH came with significant risk due to CGNH's unstable financial condition, high debt-to-asset ratio, and its reliance on debt for continuing operations.  LG was only willing to purchase the Note if it could earn a return commensurate with this risk.  The conversion feature of the Note allowed for such a return.  LG's ability to acquire stock at a discount to the market price, then resell it in the open market afforded LG an opportunity to obtain a return on its investment from third parties and to do so at a significantly higher rate of return.  Any failure by CGNH to honor the conversion feature, therefore, would deprive LG of the essential benefit for which it negotiated, and for which it purchased, the Note.

11.     To ensure the availability of shares for the purposes of conversions under the Note, §12 thereunder provides that "Prior to cash funding of this Note,

The Company will issue irrevocable transfer agent instructions reserving 3x the number of shares of Common Stock necessary to allow the Holder to convert this note based on the discounted conversion price set forth in Section 4(a) herewith." It further states that "[t]he reserve shall be replenished as needed to allow for conversions of this Note." Finally, it states "The Company will pay all transfer agent costs associated with issuing and delivering the shares." Hereinafter, this share reserve will be referred to as the Reserve.

12.    CGNH complied with the Reserve and terms of the first note, and honored all conversions thereunder. Therefore, LG desired to fund the Back-End Note.

13.    On December 8, 2014, CGNH issued the Transfer Agent Letter (the "TA Letter"), which "irrevocably authorized and instructed" Transfer Online, Inc. "to reserve Six Million Shares. . . of common stock of [CGNH] for issuance upon conversion of the Note." A true and correct copy of the TA Letter is attached hereto as **Exhibit B**. On December 15, 2014, LG funded the Back-End Note.

## CGNH's Refusal to Respond LG's May 8, 2015 Notice of Conversion

14.    On or about May 8, 2015, LG duly submitted a Notice of Conversion to CGNH seeking to convert a portion of the Note's principal and interest into shares of Common Stock. Specifically, LG elected to convert $26,000 of the principal amount and $820.60 interest of the Note into 2,983,381 shares of CGNH stock, based on a conversion price of .00899. A true and correct copy of the Notice of Conversion is attached hereto as **Exhibit C**.

15.    CGNH refused to deliver to LG the shares of Common Stock that it was obligated to deliver. CNGH predicated its refusal on the wholly unsubstantiated pretext that LG was manipulating CGNH stock prices.

16.     On or about May 15, 2015, through counsel, LG sent CGNH a Notice of Default regarding the May 8, 2015 Notice of Conversion.  A true and correct copy of the May 8, 2015 Default Notice is attached hereto as **Exhibit D.**  Neither LG nor its counsel ever received a response to the May 8, 2015 Default Notice.

17.     Upon being met with radio silence in response to its May 8, 2015 Default Notice, LG, again acting through counsel on May 15, 2015, sent a letter directly to CGNH CEO, Dr. Yahia Gawad ("Gawad"), reminding him of CGNH's obligations under the Note.  Furthermore, as a courtesy to Dr. Gawad, and in an effort to illustrate that CGNH's accusations of stock manipulations were baseless, LG informed him of the dates of LG's prior sales of CGNH stock and the number of shares sold.  A true and correct copy of the May 15, 2015 Letter is attached hereto as **Exhibit E**.

18.     On or about May 28, 2015, CGNH honored the May 8, 2015 conversion and delivered the shares to LG.

19.     On or about July 1, 2015, LG duly submitted another Notice of Conversion.  In this instance, LG sought to convert the remaining $16,500 principal and $716.05 interest of the Note into 2,374,627 shares of Common Stock.

20.     CGNH again refused to honor LG's valid conversion.  Eli Alan Safdieh ("Safdieh"), a director of LG Capital, attempted to reach Dr. Gawad on several occasions to inquire about CGNH's failure to respond to no avail.  On July 21, 2015, Safdieh emailed Gawad seeking to understand why the company was again willfully failing to honor LG's conversion attempts.

21.     On August 21, 2015, with CGNH's willful failure to honor LG's Notice of Conversion persisting, counsel to LG was again forced to draft a letter to CGNH reminding the company of its obligations and warning it of the repercussions of a

failure to honor conversion under the Note.  A true and correct copy of the August 21, 2105 Letter is attached hereto as **Exhibit F**.

22.      As of the date of filing, CGNH's failure to honor LG's valid July 1, 2015 conversion continues.

## CGNH Defaults

23.      CNGH's deliberate refusal to honor LG's July 1, 2015 Notice of Conversion has led to no less than four (4) "Events of Default", as outlined in §8 of the Note.

24.      Paramount amongst these Events of Default is CGNH's failure to deliver 2,374,627 shares of its Common Stock to LG is an Event of Default.  §8(k) of the Note states that an Event of Default shall occur if "The Company shall not deliver to the Holder the Common Stock pursuant to paragraph 4 herein without restrictive legend within 3 business days of its receipt of a Notice of Conversion."

25.      The right of conversion is unequivocal and central to the entire agreement.  By not delivering 2,374,627 shares of its Common Stock to LG within 3 business days, or by July 7, 2015, CGNH is in breach under §8(k).

26.      Additionally, CGNH is in default of §8(a), which provides that an Event of Default shall occur if "[t]he Company shall default in the payment of principal or interest on this Note or any other note issued to the Holder by the Company."

27.      Because the Note matured on May 23, 2015, and CGNH has neither paid back the remaining principal and interest, nor honored LG's conversions of said principal and interest, it is clearly in default of §8(a).

28.     Moreover, CGNH is in default of §8(c), which states that an Event of Default shall occur if "[t]he Company shall fail to perform or observe, in any respect, any covenant, term, provision, condition, agreement or obligation of the Company under this Note or any other note issued to the Holder and not cure such breach within 10 days."

29.     LG, on multiple occasions, has reminded CGNH of its obligations under the Note and has provided it with Notice of its default for failure to deliver to LG 2,374,627 shares of its common stock.  Because CGNH has failed to cure its breach within 10 days of such notice, it is in default under §8(c).

30.     Finally, CGNH is in default of §8(m), which states that an Event of Default shall occur if "[t]he Company's Stock has a closing bid price of less than $0.10 per share for at least 5 consecutive trading days."

31.     CGNH Common Stock has been trading for less than $0.10 since October, 2014, thus placing CGNH in default under §8(m).  A true and correct copy of a Yahoo! Finance Graph of CGNH's Stock Price is attached hereto as **Exhibit G**.

32.     At no point has LG ever, whether formally or informally, in writing or orally, waived CGNH's defaults.

## Contractually Provided Remedies

33.     Due to CGNH's persistent and willful failure to remedy its breaches, LG has incurred significant damages.  Since the Notice of Conversion was delivered, the trading price of CGNH has fluctuated significantly.  In fact, over the past year, the price of CGNH stock has ranged from $.01 per share to $.07 per share.  See Ex. G.  LG's conversion entitled it to 2,374,627 shares at a value of $.00899, selling

those shares on the open market, even at the median price during this time of $.04 per share, would have yielded a profit of $77,769.03.[1]

34.     Due to the difficulty in calculating the harm LG would suffer in the event of a breach, the parties agreed to liquidated damages in the event of a failure to deliver shares.  §8(p) of the Note provides that liquidated damages will accrue in the amount of $250 per day beginning on the fourth day after the notice of conversion, and increase to $500 per day beginning on the tenth day after the notice of conversion.

35.     Additionally, §8(p) Note provided that upon an event of default, interest is to accrue at a default rate of 16% per annum.

36.      Next, §8(p) provides that "[i]f [LG] shall commence an action or proceeding to enforce any provisions of this Note, including, without limitation engaging an attorney, then, if the holder prevails in such action, the [LG] shall be reimbursed by the CGNH for its attorneys' fees and other costs and expenses. . ."

37.     As a result of certain unpredictable variables in the market such as, trading volume fluctuations, reactionary trends, and the like, the exact profits that LG might stand to receive were extremely difficult, if not impossible, to calculate. As a result, the damages provisions provided for in the Note represent a reasonable valuation of potential loss to LG at the time the Note was executed.

38.     Importantly, however, the parties agreed that "[i]n case any provision of this Note is held by a court of competent jurisdiction to be excessive in scope or otherwise invalid or unenforceable, such provision shall be adjusted rather than voided, if possible, so that it is enforceable to the maximum extent possible, and the

---

[1] 2,374,627 shares multiplied by the share price of $.04 equals $94,985.08, minus the $17,216.05 converted value of the note is $77,769.03.

validity and enforceability of the remaining provisions of this Note will not in any be affected or impaired thereby."

39.     CGNH received the Notice of Conversion on July 1, 2015, making its deadline to deliver the shares July 7, 2015.  Accordingly, the default remedies agreed to and provided for have been accruing for 242 days to date of filing.

40.     As a result of the foregoing, the liquidated damage payments have reached $118,000 to date of filing, and continue to accrue daily.

41.     The default payments under the Note were reasonable at the time of entering the contract and are not grossly disproportionate to the conceivable losses that could occur from a breach.  First, stocks such as CGNH are extremely volatile, making the timing of conversion and sale of the stock on the open market extremely important.  Second, the ability to convert at a discount and sell on the open market, particularly in an upswing in the stock price, afforded LG with an opportunity to make profits well beyond the amount of the daily default payments.  Finally, given that the conversion right was so crucial to LG in negotiating the Note, it was inconceivable that CGNH would, under any circumstances, fail to fulfill its obligations under the Notes for a period of ten days, let alone over three months.

## First Claim for Relief
(BREACH OF CONTRACT: DAMAGES)

42.     LG realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 41 of this Verified Complaint as if fully set forth herein.

43.     LG, therefore, is entitled to an award of damages in an amount to be determined at trial, but no less than seventy-five thousand dollars ($75,000).

## Second Claim for Relief
(BREACH OF CONTRACT: INJUNCTIVE RELIEF)

44.     LG realleges and incorporates by reference each and every allegation contained in the paragraphs 1 through 43 of this Verified Complaint as if fully set forth herein.

45.     Pursuant to the agreement between the parties, CGNH is obligated to deliver to LG 2,374,627 shares of CGNH common stock, and to make any resolutions and provide any legal opinions necessary to allow for LG to sell the shares publicly without restriction.

46.     CGNH has failed to and refused to deliver the shares.

47.     As a result of this failure, LG has suffered harm, and has no adequate remedy at law.

48.     LG, therefore, is entitled to an Order by the Court, directing and requiring CGNH to deliver immediately to LG 2,374,627 shares of CGNH common stock, and to make any resolutions and provide any legal opinions necessary to allow for LG to sell the shares publicly without restriction.

## Third Claim for Relief
(CONVERSION: DAMAGES)

49.     LG realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 48 of this Verified Complaint as if fully set forth herein.

50.     LG, therefore, is entitled to an award of damages in an amount to be determined at trial, but not less than seventy-five thousand dollars ($75,000).

## Fourth Claim for Relief
(CONVERSION: INJUNCTIVE RELIEF)

51.    LG realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 50 of this Verified Complaint as if fully set forth herein.

52.    LG has a right to possession of 2,374,627 shares of CGNH common stock that CGNH refuses to deliver, and said right of possession is greater than CGNH's right to possess those shares.

53.    CGNH has wrongfully interfered with LG's right to possess those shares, which constitutes conversion of those shares by LG

54.    As a result of CGNH's wrongful conversion of the shares, LG has suffered harm.

55.    LG has no adequate remedy at law.

56.    LG, therefore, is entitled to an Order by the Court, directing and requiring CGNH to deliver immediately to LG 2,374,627 shares of CGNH common stock, and to make any resolutions and provide any legal opinions necessary to allow for LG to sell the shares publicly without restriction.

## Fifth Claim for Relief
(COSTS, EXPENSES & ATTORNEYS' FEES)

57.    LG realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 56 of this Verified Complaint as if fully set forth herein.

58.     In accordance with §§7 and 8(p) of the agreement between the parties, CGNH agreed to pay all costs and expenses, including reasonable attorneys' fees and expenses, incurred by LG in collecting any amount under the Note.

59.     Therefore, LG is entitled to an award against CGNH for costs and expenses incurred in the prosecution of this lawsuit, including reasonable legal fees.

## **Prayer For Relief**

**WHEREFORE**, Plaintiff LG CAPITAL FUNDING, LLC seeks judgment against Defendant CARDIOGENICS HOLDINGS, INC. as follows:

   i.     On the First and Third Claims for Relief, for damages in an amount to be determined at trial, but not less than seventy-five thousand dollars ($75,000); and

   ii.     On the Second and Fourth Claims for relief, for an Order directing and requiring CGNH to deliver immediately to LG 2,374,627 shares of CGNH common stock, and to make any resolutions and provide any legal opinions necessary to allow for LG to sell the shares publicly without restriction.

   iii.     On the Fifth Claim for Relief for an award of LG's costs and expenses in prosecuting this action, including reasonable legal fees; and

   iv.     On all Claims for Relief, for interest, attorneys' fees and the costs and disbursements of this action; and

   v.     For such other further relief as the Court may deem just, proper, and in the interest of justice.

Dated:      New York, New York
            March 10, 2016

                              RESPECTFULLY SUBMITTED,
                              GARSON, SEGAL,
                              STEINMETZ, FLADGATE LLP
                              *ATTORNEYS FOR PLAINTIFF*

                              BY: _____
                                  MICHAEL STEINMETZ (MS3164)
                                  164 WEST 25TH STREET
                                  SUITE 11R
                                  NEW YORK, NY 10001
                                  TELEPHONE: (212) 380-3623
                                  FACSIMILE: (347) 537-4540
                                  EMAIL: ms@GS2Law.com

13

VERIFICATION

STATE OF NEW YORK      )
                           ) s.s.:

COUNTY OF KINGS      )

JOSEPH LERMAN being duly sworn, state:

I am a Member of Plaintiff, LG Capital Funding, LLC ("LG"), a New York limited liability company.  I am authorized to make this Verification on behalf of Plaintiff LG.

The statements of fact set forth in the foregoing Verified Complaint are true and correct to the best of my knowledge, except as to matters therein stated to be alleged on information and belief, and to those matters, I believe them to be true.

JOSEPH LERMAN

Sworn and subscribed to before
me this ___ day of March, 2016

Notary Public